**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RICHARD KEITH PATTON,
<u>Plaintiff-Appellant,</u>

v.

ED HOLLAND, Doctor, Chairman of
the Franklin County Board of
Health; B. L. PATTERSON, Doctor,
Member, Franklin County Board of
Health; MARGUERITE MOORE,
Member, Franklin County Board of
Health; CECILA BOONE, Member,
Franklin County Board of Health;
P. G. MURPHY, JR., Member,

Franklin County Board of Health;
REBECCA DEAN, Vice Chairman,
Franklin County Board of Health;
LEE CURRIN, Doctor, Member,
Franklin County Board of Health;
ELYSE GOLDMAN, Doctor, Member,
Franklin County Board of Health;
FRANK FREEMAN, Member, Franklin
County Board of Health; BETTY
STRICKLAND, Member, Franklin
County Board of Health; ROBERT L.
SWANSON, Member, Franklin County
Board of Health;

No. 95-1699

FRANKLIN COUNTY BOARD OF HEALTH,
as a body politic, and administrative
organization existing under the laws
of the State of North Carolina and
duly appointed in Franklin County,
North Carolina; JAMES G. HARDY,
Doctor, Chairman, Franklin County
Board of Commissioners; RONNIE
GOSWICK, Franklin County Board of
Commissioners; HARRY L. FOY, JR.,
Franklin County Board of
Commissioners; GEORGE T. WYNNE,
Franklin County Board of
Commissioners; ROBERT L.
SWANSON, Franklin County Board of
Commissioners; JIM MOSS, Franklin
County Board of Commissioners;
FRANKLIN COUNTY BOARD OF
COMMISSIONERS, as a body politic
formed and existing under the laws
of the state of North Carolina and
in Franklin County, North Carolina,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(CA-93-85-5-BO)

Argued: December 6, 1995

Decided: January 8, 1996

Before RUSSELL, WILKINS, and HAMILTON,
Circuit Judges.

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** David Peter Voerman, VOERMAN & CARROLL, New Bern, North Carolina, for Appellant. David R. Guin, BATTON & GUIN, Louisburg, North Carolina, for Appellees. **ON BRIEF:** Darnell A. Batton, BATTON & GUIN, Louisburg, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Richard Keith Patton (Patton) appeals the district court's dismissal of his complaint, see Fed. R. Civ. P. 12(b)(6), alleging claims of constitutional deprivation protected by 42 U.S.C. § 1983 and state law tort claims. We affirm.

I

Patton is employed as the Health Director of the Franklin County Health Department (Health Department) in Louisburg, North Carolina. The Franklin County Board of Health (Board of Health) is a body appointed by the Franklin County Board of Commissioners (Board of Commissioners) and is charged with the general responsibility of overseeing the Health Department.

Before November 1991, Patton assisted in the formation of a non-profit corporation known as the Home Health Alliance (Alliance). This corporation was formed to be operated by home health care pro-

3

viders so that Franklin County would not have to subcontract with more expensive home health businesses. One of the nurses who worked for Alliance was Patton's mother-in-law.

The records and billing for Alliance were handled by a corporation known as DataTrac. DataTrac was owned and operated by an administrative assistant of Patton's in the Health Department, and Patton's wife also performed work for DataTrac.

The activities of Patton, his wife, and his administrative assistant resulted in the Board of Commissioners requesting an investigation by the Office of the State Auditor. An audit report was completed and sent to the Board of Commissioners. Sometime after the receipt of the audit report by the Board of Commissioners, the audit report was forwarded to the Board of Health. The chairman of the Board of Commissioners requested that the audit report be made public and requested its immediate release. The audit report made the following findings:

> (1) Patton entered into a contract for the Health Department with a corporation that he organized and of which his mother-in-law was employed;

> (2) A conflict of interest exists as to Patton's control over Alliance;

> (3) A conflict of interest exists due to Patton's wife's employment with DataTrac and his administrative assistant's ownership of DataTrac;

> (4) Alliance does not have a nursing pool license;

> (5) Patton failed to disclose that his mother-in-law was employed by Alliance on the Franklin County Home Health Agency Cost Report;

> (6) The administrative assistant did not properly report her secondary employment;

4

(7) The contract awarded to Alliance by the Health Department was not put out for bid and we question whether Alliance is the most cost effective way of providing home health services; and

(8) Alliance nurses may be visiting county patients who are no longer eligible and providing inadequate or inappropriate services.

(J.A. 105).

After the audit report was made public, the Board of Health issued Patton a notice of disciplinary action. Patton was informed that this disciplinary action could result in his discharge. The grounds for the disciplinary action were those listed in the audit report.

After a series of meetings with the Board of Health, in which Patton was represented by counsel and contested the validity of the audit report's findings, the Board of Health issued a letter of warning to Patton for his failure to fully disclose the relationship of his administrative assistant to Alliance as the owner of DataTrac and for work his wife had performed for DataTrac. The Board of Health took no further disciplinary action.

On February 16, 1993, Patton filed a complaint in the United States District Court for the Eastern District of North Carolina alleging that the Board of Commissioners, the Board of Health, and each respective member of the Board of Commissioners and the Board of Health had deprived him of his constitutional rights to procedural and substantive due process in violation of 42 U.S.C. § 1983. Patton also sought relief under North Carolina law for intentional and negligent infliction of emotional distress. Patton also sought to enjoin the Board of Commissioners and the Board of Health from any further interference with his employment as Health Director.

The defendants filed a motion to dismiss, see Fed. R. Civ. P. 12(b)(6), which the district court granted. Patton appeals from this ruling.

5

II

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is properly granted where, construing the allegations of the complaint in the light most favorable to the plaintiff and assuming the facts in the complaint are true, it is clear as a matter of law that no relief could be granted under any set of facts that could be proven consistent with the allegations. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). This Court reviews a Rule 12(b)(6) dismissal de novo. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

III

Reduced to its essentials, Patton's complaint raises two procedural due process claims, one substantive due process claim, and two state law tort claims. We shall address each of these claims in turn.

A

Patton argues that he was deprived of his property interest in continued employment. We disagree.

Initially, we agree with the defendants' concession and the district court's conclusion that North Carolina law provides Patton with a cognizable property interest in continued employment. See N.C. Gen. Stat. § 126-35.

Having established the existence of a cognizable property interest, to succeed on his claim, Patton must establish that he was deprived of that property interest. See Pinar v. Dole, 747 F.2d 899, 913 (4th Cir. 1984), cert. denied, 471 U.S. 1016 (1985). Patton has made no such showing.

Most fundamentally, this claim fails because no break in Patton's employment ever occurred. See Elbert v. Board of Educ., 630 F.2d 509, 512 (7th Cir. 1980) (no deprivation of property interest where plaintiff's contract was renewed and no break in employment occurred), cert. denied, 450 U.S. 1031 (1981). Indeed, to this day,

6

Patton remains the Health Director. Accordingly, Patton was not deprived of his property interest in continued employment.

In any event, Patton was afforded all the process he was due. Prior to depriving a public employee of his property interest in continued employment, due process entitles the public employee to "notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Cleveland Board of Educ. v. Loudermill, 470 U.S. 532, 546 (1985).

Here, Patton was given notice of the specific allegations of misconduct that could result in his termination. After the notice of disciplinary action was issued, Patton, represented by counsel, was given an opportunity to present his side of the story during two lengthy meetings with the Board of Health. The result of these meetings did not result in Patton's termination, but rather resulted in the Board of Health's issuance of a letter of warning. Patton was provided all the protection due process affords.

B

Patton also claims he was deprived of his property interest in recouping the attorney's fees he expended in contesting the proposed disciplinary action against him. We disagree.

North Carolina General Statute section 126-4(11) identifies the instances in which the State Personnel Commission may adopt rules that authorize payment of attorney's fees. Section nine of the State Personnel Manual, codified in North Carolina Administrative Code section 1B.0414, specifically sets out the situations when attorney's fees may be awarded. Under section nine, attorney's fees are permitted if the employee is: (1) reinstated to the same or similar position following a demotion or a dismissal; (2) awarded back pay following a demotion or a dismissal; (3) determined to have been discriminated against in violation of North Carolina General Statute section 126-16; or (4) awarded back pay as a result of a successful grievance alleging a violation of North Carolina General Statute section 126-7.1.

Here, it is clear that none of these situations apply. Because Patton was not demoted or removed from his position as Health Director,

was not deprived of any pay, was not found to have been discriminated against, and did not file a grievance alleging a violation of section 126-7.1, he has no property interest in attorney's fees. Accordingly, the district court properly dismissed this claim.

C

Patton also contends that the actions of the defendants deprived him of his liberty interest to pursue his occupation in the health field.[1] We disagree.

Injury to reputation, standing alone, does not implicate a protected liberty interest. See Paul v. Davis, 424 U.S. 693, 711-12 (1976); Siegert v. Gilley, 111 S. Ct. 1789, 1794 (1991). In addition, loss of future employment prospects which flow from the damage to a plaintiff's reputation does not create a liberty interest. See Siegert, 111 S. Ct. at 1794. Defamation, which is the essence of Patton's claim, is redressable in state court, but not as a deprivation of a liberty interest. See Paul, 424 U.S. at 712.

Patton's substantive due process claim is really a run-of-the-mill defamation claim--the claim involves an attempt by Patton to remedy his perceived injury to his reputation. The claim belongs in state court. There are no allegations which could support a claim for a deprivation of a liberty interest.[2]

_____

[1] To support this claim, Patton cites to alleged instances in which he has been unable to find comparable work in the health field.
[2] In any event, in the absence of a termination, there is no claim for deprivation of a protected liberty interest, despite evidence of stigmatizing behavior by state officials. See Paul, 424 U.S. at 709-10; see also Elbert, 630 F.2d at 513. As the court in Elbert explained:

> It would be an unduly technical reading of Paul v. Davis to conclude that, as long as the defamation was accompanied by an official decision to terminate the plaintiff, a claim for a loss of a liberty interest could be made out, even though in fact no loss of employment ever occurred.

630 F.2d at 513.

8

D

Finally, Patton argues that the district court erred in dismissing his state law claims for intentional and negligent infliction of emotional distress. We disagree.

Under North Carolina law, the elements for a claim for intentional infliction of emotional distress include extreme and outrageous conduct. See Harris v. NCNB, 355 S.E.2d 838, 844 (N.C. Ct. App. 1987). The "extreme and outrageous conduct" necessary for recovery is conduct that "exceeds all bounds usually tolerated by decent society." Id. (citation and internal quotes omitted).

In this case, the defendants' alleged conduct fails to reach a level that could be regarded as so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. Accordingly, the district court correctly dismissed Patton's claim for intentional infliction of emotional distress.

Patton fares no better on his negligent infliction of emotional distress claim. Even assuming that the defendants were negligent in such a way that could be reasonably foreseen to cause emotional distress, defendants are public officials and are not liable for mere negligence in the performance of their duties. See Shaw v. Stroud, 13 F.3d 791, 803 (4th Cir.), cert. denied, 115 S. Ct. 67, 68 (1994); see also Wiggins v. City of Monroe, 326 S.E.2d 39, 43 (N.C. Ct. App. 1985). Accordingly, the district court correctly dismissed the negligent infliction of emotional distress claim.

IV

For the reasons stated herein, the judgment of the district court is affirmed.

AFFIRMED